| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>  & SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>  Chapter 7 Trustee<br>103 Eisenhower Parkway<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>QUALITY KITCHENS OF PHILADELPHIA, INC.,<br><br>                    Debtor. | Case No. 22-10462 (JKS)<br><br>Judge:  John K. Sherwood<br><br>Chapter 7 Proceeding |
| BENJAMIN A. STANZIALE, Jr., Chapter 7 Trustee for Quality Kitchens of Philadelphia, Inc.,<br><br>                    Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., AMERICAN EXPRESS NATIONAL BANK, STEPHEN EARL, JONATHAN EARL and DAVID EARL,<br><br>                    Defendants. | Adv. Pro. No. 24-01036 JKS |

## AMENDED COMPLAINT

Plaintiff, Benjamin A. Stanziale, Jr. Chapter 7 Trustee ("Plaintiff" or "Trustee") for Quality Kitchens of Philadelphia, Inc. ("Debtor"), by way of Amended Complaint against defendants, Stephen Earl ("Stephen"), Jonathan Earl ("Jonathan"), David Earl ("David"), American Express Company ("AmexCo"), American Express Travel Related Services Company,

Inc. ("Amex TRS"), and American Express National Bank ("Amex NB") (all three collectively or any one or more of the three, "Amex"), says as follows:

## JURISDICTION AND VENUE

1. Debtor filed a Petition under Chapter 7 of the United States Bankruptcy Code on January 20, 2022.

2. The Trustee was appointed as Chapter 7 Trustee by the United States Trustee on January 20, 2022 and is the duly qualified and acting trustee of the estate of the Debtor.

3. This adversary proceeding relates to the Chapter 7 case of the Debtor.

4. The United States Bankruptcy Court for the District of New Jersey has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157(b)(1) and 1334 because this is an adversary proceeding arising under, or arising in or related to, the Debtor's bankruptcy proceedings under Title 11.

5. This matter is a core proceeding within the meaning of 28 U.S.C. §§157(b)(2)(A), (H) and (O).

6. Venue is properly laid in this District pursuant to 28 U.S.C. §1409.

7. Plaintiff brings this adversary proceeding pursuant to §§544, 548 and 550 of the Bankruptcy Code and Bankruptcy Rule 7001, et seq.

## PARTIES

8. According to Debtor's Petition, Jonathan was the President and a 24% owner of the Debtor.

9. According to the Debtor's Petition, David was not an officer or owner of the Debtor.

2

10. According to Debtor's Petition, Stephen was a 76% owner of the Debtor, and, upon information and belief, is the father of Jonathan and David.

11. Upon information and belief, Amex NB is a subsidiary of Amex TRS which is a subsidiary of AmexCo. One or more of Amex are financial institutions that, among other activities, issued credit cards to an entity related to the Debtor, The Merit Corporation ("Merit") (account ending in 1009) (whose own companion Chapter 7 is pending under Case No. 22-10460-JKS), Stephen (account ending in 2000), and Jonathan (accounts ending in 3003 and/or 2005) and, upon information and belief, provide credit card services to consumers and businesses across the country. Upon information and belief, at least one credit card account upon which the Debtor made payments as set forth hereinafter in this complaint was issued by each of Amex TRS (account ending 1009) and Amex NB (account ending 2000).

## BACKGROUND FACTS

12. The Trustee and his professionals examined the Debtor's available financial books and records.

**Amex**

13. During the period from February 16, 2018 through April 17, 2018, the Debtor made payments to Amex from the Debtor's Santander Bank account ending in 3568 by ACH in the total amount of $200,245.83, as set forth on the attached Exhibit A ("Amex Payments"). Those payments satisfied amounts due on accounts held in the name of The Merit Corporation, Jonathan Earl, and Stephen Earl, as set forth on Exhibit A, since Debtor had no Amex credit cards.

14. The Trustee served a subpoena on Amex on July 28, 2023, seeking credit card statements for the four years prior to the filing of the Petition covering the above accounts of which the Trustee was aware, as well as other possible accounts of the Debtor, but did not

receive the full responsive production of such records until December 1, 2023. Initial review of these records evidenced that this production did not cover all payments made to Amex, so a second subpoena was served on December 11, 2023. A third subpoena was served on January 9, 2023. A response to these latter two subpoenas was not received until January 10, 2024. As a result, the Trustee has not been able to date to fully delineate which payments relate to which Amex cards.

**Jonathan Earl**

15. During the years preceding the filing of the Petition, Jonathan earned a substantial salary as President of the related entity, Merit, which amounted to $244,385 in 2020 and $283,766 in 2021.

16. $52,746 of the Amex Payments were made in satisfaction of charges on Jonathan's personal Amex account(s) ("Amex/Jonathan Card Payments"). The Amex/Jonathan Card Payments are set forth on attached Exhibit A.

17. During the four-year period before the filing of the Petition, the Debtor made payment(s) from the Debtor's Santander Bank account ending in 3568 by ACH which paid for the charges on Merit's Amex credits card(s) issued specifically to Jonathan. Upon information and belief, a portion of the Debtor's aforesaid payments to Amex on the Merit's Amex credit card(s) during the four years before the filing of the Petition ("Amex/Jonathan Payments") were in payment for charges that were for the personal expenses of Jonathan, and not for legitimate business expenses of the Debtor.

**David Earl**

18. During the years preceding the filing of the Petition, David earned a substantial salary as Vice-President and Secretary of the related entity, Merit, which amounted to $222,284 in 2020 and $243,430 in 2021.

4

19. During the four-year period before the filing of the Petition, the Debtor made payment(s) from the Debtor's Santander Bank account ending in 3568 by ACH which paid for the charges on the Merit's Amex credits card(s) issued specifically to David. Upon information and belief, a portion of the Debtor's aforesaid payment(s) to Amex on Merit's Amex credit card(s) and during the four years before the filing of the Petition ("Amex/David Payments") were in payment for charges that were for the personal expenses of David, and not for legitimate business expenses of the Debtor.

**Stephen Earl**

20. Stephen was not employed by the Debtor, nor an officer of the Debtor at the time of the filing of the Petition, nor, upon information and belief, in the four years prior to the filing of the Petition in this case.

21. $80,684.33 of the Amex Payments were made in satisfaction of charges on Stephen's personal Amex account ("Amex/Stephen Card Payments"). The Amex/Stephen Card Payments are set forth on attached Exhibit A.

22. During the four-year period before the filing of the Petition, the Debtor made payment(s) from the Debtor's Santander Bank account ending in 3568 by ACH which paid for the charges on Merit's Amex credits card(s) issued specifically to Stephen. Upon information and belief, the Debtor's aforesaid payments to Amex on Merit's Amex credit card(s) during the four years before the filing of the Petition ("Amex/Stephen Payments") were in payment for charges that were for the personal expenses of Stephen, and not for legitimate business expenses of the Debtor.

**FIRST COUNT**

23. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as if set forth more fully herein.

5

24. The Amex/Jonathan Payments, the Amex/Jonathan Card Payments, the Amex/David Payments, the Amex/Stephen Card Payments, and the Amex/Stephen Payments were made by the Debtor without receiving equivalent value in exchange for the aforesaid payments.

25. Debtor's income tax returns reflect that liabilities exceeded assets at December 31, 2017 and December 31, 2018. Furthermore, Debtor's tax returns show net losses for tax purposes in all years from 2018 through the filing of the bankruptcy petition.

26. The principals of the Debtor assert that the former Chief Financial Officer of the Debtor had inflated sales and receivables on the books of the Debtor, leading to the conclusion that Debtor's accounts receivable were likely overstated on Debtor's balance sheets, deepening the apparent insolvency. Further, Debtor's tax returns did not reflect liabilities to the secured lender, its factor, to which, upon information and belief, it owed substantial funds, thus also likely deepening Debtor's insolvency.

27. Further, during the period from December 31, 2017 to December 31, 2018, the Debtor's current assets were insufficient to cover its current obligations, such as accounts payable and affiliates loans payable. During this period and thereafter, the Debtor borrowed heavily from its affiliate, Merit, in order to satisfy its obligations and fund operations. Merit, however, was also insolvent during this period of time.

28. The Debtor continued its business operations from January 20, 2018 to the date of the filing of its petition. Upon information and belief, at the time of each of the payments referenced above in paragraph 24, the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

29. Each of the payments referenced above in paragraph 24 were therefore fraudulent transfers within the meaning of N.J.S.A. 25:2-25(b)(1)[1], made applicable by §544 of the Bankruptcy Code, with respect to the Trustee who may avoid any transfer voidable by a creditor holding an unsecured claim.

30. Pursuant to §550(a) of the Bankruptcy Code, the Trustee may recover the payments or the value of such payments from the recipient of such payment or the individual for whose benefit such payment was made for the benefit of the Debtor's estate to the extent such payments are avoided under §544 or §548 of the Bankruptcy Code.

WHEREFORE, the Trustee demands judgment as follows with respect to the following defendants as to the transfers represented by the following payments: (i) with respect to Amex and Stephen, jointly and severally, as to the Amex/Stephen Card Payments; (ii) with respect to David and Amex, jointly and severally, as to the Amex/David Payments; (iii) with respect to Jonathan and Amex, jointly and severally as to the Amex/Jonathan Payments; (iv) with respect to Stephen and Amex, jointly and severally, as to the Amex/Stephen Payments; and (v) with respect Jonathan and Amex, jointly and severally, as to the Amex/Jonathan Card Payments:

    a.    For avoidance of those transfers;

    b.    For recovery of the property transferred or the value of the property transferred to or for the benefit of that defendant;

    c.    For interest and costs of suit; and

    d.    For whatever further relief the Court may deem equitable.

---

[1] This statute was amended prior to the filing of the petition in this action, but the amended version is inapplicable to transfers that pre-date the amendment such as those at issue here.

## SECOND COUNT

31. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as if set forth more fully herein.

32. Defendants Jonathan, David and Stephen by their intentional conduct described above, have improperly used, misappropriated and converted the property of the Debtor with the intent to permanently deprive the Debtor of the same as set forth above.

33. The Debtor's estate has sustained damages, including, but not limited to, the expenditure of monies to pay expenses incurred by Jonathan, David and Stephen for each of their benefit and not that of the Debtor, all as a result of the aforesaid conduct of these defendants.

WHEREFORE, the Trustee demands judgment as follows with respect to the following defendants as to the transfers represented by the following payments: (i) with respect to Stephen and Jonathan, jointly and severally, as to the Amex/Stephen Card Payments and the Amex/Stephen Payments; (ii) with respect to David as to the Amex/David Payments; and (iii) with respect to Jonathan as to the Amex/Jonathan Payments and the Amex/Jonathan Card Payments:

    a. For damages in an amount to be determined by the Court;

    b. For interest and costs of suit; and

    c. For whatever further relief the Court may deem equitable.

## THIRD COUNT

34. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as if set forth more fully herein.

35. Jonathan owed a fiduciary duty and obligation to the Debtor and its estate as a consequence of his position as described above.

36. The intentional conduct of Jonathan, as described above, including actions resulting in misappropriation of corporate assets, constitutes a breach of his fiduciary duties and obligations due and owing to the Debtor and its estate.

37. The Debtor's estate has sustained damages, including, but not limited to, the expenditure of monies to pay expenses incurred by Jonathan, David, and Stephen for each of their benefit and not that of the Debtor, all as a result of the aforesaid conduct of Jonathan.

WHEREFORE, the Trustee demands judgment as follows with respect to Jonathan as to the transfers represented by the following payments: (i) the Amex/Stephen Card Payments and the Amex/Stephen Payments; (ii) the Amex/David Payments; and (iii) the Amex/Jonathan Payments and the Amex/Jonathan Card Payments:

    a. For damages in an amount to be determined by the Court;

    b. For interest and costs of suit; and

    c. For whatever further relief the Court may deem equitable.

## FOURTH COUNT

38. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as if set forth more fully herein.

39. The individual defendants received payments on each of their behalf from the Debtor to which each was not entitled and as to which the Debtor had the right to expect to be recompensed by the Debtor. Upon information and belief, no defendant paid back the funds in question to the Debtor.

40. As a result of the conduct described above, each of the individual defendants have been unjustly enriched at the expense of Debtor and its estate.

WHEREFORE, the Trustee demands judgment as follows with respect to the following defendants as to the transfers represented by the following payments: (i) with respect

9

to Stephen as to the Amex/Stephen Card Payments and the Amex/Stephen Payments; (ii) with respect to David as to the Amex/David Payments; and (iii) with respect to Jonathan as to the Amex/Jonathan Payments and the Amex/Jonathan Card Payment:

    a.    Awarding restitution to the estate in the amount of said transfers;

    b.    Directing that each such defendant disgorge and remit to the estate the amount of the aforesaid transfers;

    c.    For interest and costs of suit; and

    d.    For whatever further relief the Court may deem equitable.

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff, Benjamin A. Stanziale, Jr., Chapter 7 Trustee for Quality Kitchens of Philadelphia, Inc.

By:     /s/ Patricia A. Staiano
    PATRICIA A. STAIANO
    A Member of the Firm

Dated: March 8, 2024

413224